INTERNATIONAL HARVESTER CREDIT CORPORATION *v.* GILL.

5-2359                                             344 S. W. 2d 851

Opinion delivered April 3, 1961.

*Owens, McHaney & McHaney,* by *James M. Mc-Haney,* for appellant.

*Gardner & Steinsiek, Frierson, Walker & Snellgrove,* for appellees.

GEORGE ROSE SMITH, J. Noble Gill, at his death in 1960, was indebted to the appellant upon a title-retaining contract evidencing an indebtedness of $2,905.97. By the contract the appellant purportedly retained title to an International Harvester tractor and plow that Gill had purchased in 1957. Gill's executrix, one of the appellees,

filed a petition in the probate court asserting that the debt exceeded the value of the property and asking for authority to release the property to the appellant in return for a cancellation of the debt. The appellant later joined in the request that the property be released to it.

The executrix's petition was resisted by the other appellee, Monette State Bank, a common creditor of the estate. The bank insisted that the appellant's title-retaining contract was invalid and that therefore the property in question should be retained by the estate for the benefit of all the creditors. The probate court sustained the bank's contention and entered an order denying the petition for a release of the property. The validity of the appellant's contract is the basic issue in the case.

All the facts are stipulated. On February 15, 1957, Gill bought the property in question from Van Hooser Implement Company and executed a conditional sales contract for the unpaid balance of $5,707.11. A short time later Van Hooser fraudulently induced Gill to execute a duplicate contract, it being represented that the first copy would be returned to Gill.

On April 15, 1957, Van Hooser transferred one of the contracts to the Monette State Bank, which took the instrument in good faith and for value. On May 11, 1957, Van Hooser transferred the other contract to the appellant, also as a bona fide purchaser. It is not known which of the transferees received the copy that was first signed by Gill. It is conceded, however, that the bank, as the bona fide purchaser prior in point of time, originally acquired the superior claim to the property. *Kirkpatrick* v. *Reed,* Mo. App., 204 S. W. 1135. We infer that when Gill discovered the fraud he recognized that he had allowed himself to become liable to both transferees, for he made payments upon both contracts. It is stipulated that in 1958 Gill executed a renewal contract to the appellant after having been informed by his attorney that he was thereby recognizing the validity of the appellant's contract.

On June 9, 1959, the bank brought a suit at law against Gill upon its contract. It is stipulated that the bank thereby waived its retained title to the property in issue. Finally, on September 15, 1959, Gill executed a second renewal contract to the appellant for the balance of $2,905.97 then due. This agreement recites that it is a renewal of a note given for the purchase price of the equipment, which is described, and states that the title to the property shall not pass from the appellant until the renewal note has been paid in full.

We are unable to agree with the probate court's conclusion that the second renewal contract did not effectively vest in the appellant a valid title to the property. It must be emphasized that before that contract was executed the bank had already waived its title and, as we said in *Provance* v. *Arnold B. & B. Supply Co.*, 218 Ark. 274, 235 S. W. 2d 970, ''was in the same position as it would have been if title had not been retained in the first place.''

It is plain enough that neither of the contracts originally executed by Gill to Van Hooser can be said to have been void; for either instrument would become valid in all respects if it should be the first one to be transferred to a bona fide purchaser. And even the second instrument to be transferred became, in the hands of a holder in due course, a valid monetary claim against Gill, despite the fact that a superior title to the chattels had already vested in the bank. Thus it might well be argued that when the bank waived its title the appellant was thereby promoted to a position of priority as against general creditors having no specific lien. Our ruling need not be that broad, however, for in any event we think it clear that when Gill later executed the renewal contract for the unpaid balance of the original purchase price he thereby ratified the initial transaction and effectively called into being the potential validity that had been inherent in the appellant's contract from its inception.

Reversed.